PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


NATALIE ADKINS,                      )
                                     )      CASE NO. 5:15cv922
              Plaintiff,             )
                                     )
       v.                            )
                                     )      JUDGE BENITA Y. PEARSON
PHOENIX RISING BEHAVIORAL            )
HEALTHCARE & RECOVERY INC., *et*     )
*al.*,                               )
                                     )      **MEMORANDUM OF OPINION AND**
              Defendants.            )      **ORDER** [Resolving ECF Nos. 37 and 39]


       Pending before the Court are Defendants' Motion for Summary Judgment on the issue of

exemption (ECF No. 37) and Plaintiff's Motion for Conditional Certification and Court-

Authorized Notice (ECF No. 39).  The Court has been advised, having reviewed the record, the

parties' briefs and the applicable law.  For the reasons set forth below, the Court denies

Defendants' Motion for Summary Judgment and grants Plaintiff's Motion for Conditional

Certification.[1]

_____

       [1] Plaintiffs argue that Defendants' Motion for Summary Judgment is not timely and
should be stricken from the record.  ECF No. 43 at PageID #: 2456.  The Court finds that,
although the Court did not explicitly instruct Defendants to file a motion for summary judgment
on exemption in its Case Management Plan, ECF No. 13, given the parties' discussion at the
Case Management Conference, ECF No. 14 (Transcript), it was reasonable for Defendants to
understand that the Court wanted to address the issue of Plaintiff's exempt status through a
motion for summary judgment at this stage.

(5:15cv922)

## I.  Background

Plaintiff Natalie Adkins brings this putative class action, on behalf of herself and a

and all others similarly situated, against Defendant Phoenix Rising Behavioral Healthcare, Inc.

and Defendant Lisa Grubbs ("Defendants").[2]  Plaintiff applied for a job at Phoenix Rising

Behavioral Healthcare and was hired on or around January 27, 2014.  ECF No. 43-1 at PageID #:

2526.  For all but one month of her employment, Plaintiff was employed as a case manager, or

Community Psychiatric Supportive Treatment ("CPST").  Id. at PageID #: 2526–37.  From

January 5, 2015 through February 10, 2015, Plaintiff was employed as a Licensed Practical Nurse

("LPN").  ECF No. 1 at PageID #: 3; ECF No. 43-18 at PageID #: 3183.  Plaintiff alleges that

she was not paid overtime for work performed in either of these positions and that neither

position was exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29

U.S.C. §§ 201 et seq., the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111 et seq., or

the Ohio Prompt Pay Act, O.R.C. § 4113.15.  ECF No. 1 at PageID #: 12–13 ¶ 66.

As a CPST, Plaintiff worked with mentally ill clients to help them gain independence by

assessing their needs, facilitating development of daily living skills, and monitoring their

symptoms.  ECF No. 43-4 at PageID #: 2819; ECF No. 37 at PageID #: 1604.  When a new client

presents to Phoenix Rising, she is first evaluated by a therapist who performs a diagnostic

assessment.  ECF No. 43-2 at PageID #: 2734.  If necessary, the client is evaluated by a

---

[2]  While it appears the Amended Complaint seeks class certification that includes LPNs, Plaintiff's motion for class certification does not.  The ruling that follows on the issue of overtime paid while an LPN pertains to Plaintiff individually.

2

(5:15cv922)

psychiatrist. *Id.* After a patient has been formally evaluated, she is referred to a case management supervisor, who in turn refers the client to a CPST. *Id.* Although parties dispute CPSTs' specific job duties, CPSTs generally work one-on-one with clients to develop individual service plans ("ISPs") designed to achieve the client's goals, complete progress notes after they meet with their clients, and "eyeball" clients to assess their mental health. ECF No. 43-4 at PageID #: 1604–05. CPSTs are not qualified to make medical diagnoses or perform psychotherapy, but if the client needs additional services, the CPST can refer the client for evaluation. ECF No. 43-2 at PageID #: 2790.

Defendants require their CPSTs have a Bachelor's Degree in a human service field or equivalent years of experience and education. ECF No. 43-4 at PageID #: 2821. Two CPSTs did not have college degrees at the time of hiring. ECF No. 43-16 at PageID #: 3166. CPSTs earn salaries between $27,040 a year and $33,900 a year. *Id.* at PageID #: 3168–3170. Plaintiff's salary was $30,000 a year. *Id.*

LPNs work with psychiatrists, other LPNs and Registered Nurses ("RNs"), CPST Supervisors, CPSTs, and other clinical staff to help clients reduce, stabilize, or eliminate their psychiatric symptoms, provide nursing assessments, and give injections to clients. ECF No. 43-4 at PageID #: 2826. LPNs must have a current, valid license from the Ohio Board of Nursing and preferably two years experience in psychiatric nursing setting, or a knowledge of mental health. *Id.* at PageID #: 2826.

Defendants do not dispute that they have always classified all CPST employees as exempt from overtime, a decision Defendants made based on Defendant Lisa Grubbs' experience in the

3

(5:15cv922)

case management industry and her knowledge of other agencies' practices.  ECF No. 37 at PageID #: 1602.  Nor do the parties dispute that LPNs are non-exempt employees, and subject to overtime laws.  _Id._

## II.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure of materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); _see also Johnson v. Karnes_, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  _Celotex Corp. v. Catrett_, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial."  _Guarino v. Brookfield Twp. Trustees_, 980 F.2d 399, 403 (6th Cir. 1992).

After the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of material facts in dispute.  An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury."  _Cox v. Ky. Dep't of Transp._, 53 F.3d 146, 150 (6th Cir. 1995).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the court must evaluate whether the evidence could persuade a reasonable factfinder that the non-moving party is entitled to a verdict.  _Id._

4

(5:15cv922)

To defeat a motion for summary judgment, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily is not sufficient to defeat a motion for summary judgment.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).

### III.  Defendants' Motion for Summary Judgment (ECF No. 37)

Under the FLSA,[3] all employers are required to pay employees one and one-half times their regular rate of pay for work performed in excess of forty hours in a single week.  29 U.S.C. § 207(a)(1).  An employer that violates the overtime provision can be held liable for unpaid overtime compensation plus an equal amount as liquidated damages.  29 U.S.C. § 216(b).  The overtime requirement is subject to exceptions—certain employees are exempt from overtime pay.  29 U.S.C. § 213.  Exemptions are "narrowly construed to further Congress's goal of giving broad federal employment protection."  *Fazekas v. Cleveland Clinic Found. Healthcare Ventures, Inc.*, 204 F.3d 673, 675 (6th Cir. 2000).

---

[3] Although Plaintiff asserts claims under federal and state law, the Court need only consider the federal claims, as the Ohio statute expressly incorporates the standards and principles of the FLSA.  *Thomas*, 506 F.3d at 501.

5

(5:15cv922)

The employer has the burden of proving that the employee meets each of the exemption's requirements by "clear and affirmative evidence." *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007); *ACS v. Detroit Edison Co.*, 444 F.3d 763, 767 (6th Cir. 2006). This is not a heightened evidentiary burden. "[B]ecause establishing the applicability of an FLSA exemption is an affirmative defense, [the defendant] has the burden to establish the . . . elements by a preponderance of the evidence." *Thomas*, 506 F.3d at 501–02 (quoting *Renfro v. Ind. Mich. Power Co.*, 497 F.3d 573, 576 (6th Cir. 2007)). The ultimate question of whether an employee is exempt from overtime wage requirements is a question of law. *Ale v. TVA*, 269 F.3d 686, 691 (6th Cir. 2001).

The FLSA specifically exempts all employees working in a "bona fide . . . professional capacity." 29 U.S.C. § 231(a)(1). To qualify for the "learned professional" exemption, an employee must meet two tests: (1) the salary-basis test and (2) the primary duties test. 29 C.F.R. § 541.301. The salary-basis test asks whether the employee is "compensated on a salary or fee basis at a rate of not less than $455 per week." *Id.* at § 541.600(a). There is no dispute that Plaintiff, who was paid $30,000 a year, meets the salary-basis test. ECF No. 37 at PageID #: 1608; ECF No. 43 at PageID #: 2457 n.73. Therefore, the only remaining question is whether her primary job duties fall within the exemption.

"To qualify for the learned professional exemption, an employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.6301(a). The primary duty test has three elements: (1) the employee must perform work

(5:15cv922)

requiring advanced knowledge; (2) the advanced knowledge must be in a field of science or learning; and (3) the advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.  *Id.*  Parties dispute all three elements of the test.

"Work requiring advanced knowledge" is work that is "predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work."  *Id.* at § 541.301(b).  This type of knowledge cannot be attained at the high school level.  *Id.*  "The phrase 'field of science or learning' includes the traditional professions of law, medicine, theology, accounting, actuarial computation, engineering, architecture, teaching, various types of physical, chemical and biological sciences, pharmacy and other similar occupations that have a recognized professional status as distinguished from the mechanical arts or skilled trades where in some instances the knowledge is of a fairly advanced type, but is not in a field of science or learning."  *Id.* at § 501.301(c).  Knowledge that is "customarily acquired by a prolonged course of specialized intellectual instruction" "restricts the exemption to professions where specialized academic training is a standard prerequisite for entrance into the profession.  *Id.* at § 541.301(d).  The best *prima facie* evidence that an employee meets this requirement is possession of the appropriate academic degree."  *Id.*  The Federal Regulations explain that the although this type of advanced knowledge can be acquired through a "combination of work experience and intellectual instruction," this is an exception to the rule intended for "the occasional lawyer who has not gone to law school, or the occasional chemist who is not the possessor of a degree in chemistry."  *Id.*  "[O]ccupations that customarily may be performed with only the general knowledge acquired by

7

(5:15cv922)

an academic degree in any field, with knowledge acquired through an apprenticeship, or with training in the performance of routine, mental, manual, mechanical, or physical processes" do not fall within the exemption. *Id.* Nor does the exemption apply to "occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction." *Id.*

The Federal Regulations offer examples of professions that are considered learned professionals. *Id.* at § 541.301(e). For instance, registered nurses who have been registered by a State examining board are considered learned professionals, but licensed practical nurses are excluded from the exemption because "possession of a specialized advanced academic degree is not a standard prerequisite for entry into such occupations." *Id.* at § 541.301(e)(2). Although not an explicit rule, many of the Federal Regulations' examples of learned professions require a specific, standardized course of professional study and possibly a certification or accreditation process. *See id.* at §§ 541.301(e)(1)-(9).

In a case addressing the learned professionals exemption generally, the Sixth Circuit held that a funeral director and embalmer who had to complete a year of mortuary science school and two years of college, take national board tests, practice as an apprentice for one year, and pass a state exam was a learned professional under 29 C.F.R § 541.301. *Rutlin v. Prime Succession, 220 F.3d 737, 742 (6th Cir. 2000).* Although the plaintiff was not required to have a bachelor's degree, the Sixth Circuit held that the combination of educational requirements was sufficient to fulfill the FLSA's requirement that he possess "advanced, specialized knowledge" in order to perform his duties. *Id.*

8

(5:15cv922)

The Sixth Circuit has not yet had an occasion to rule on whether case managers are exempt as learned professionals, but other circuits have evaluated whether similar professions fall under the learned profession exemption.  In *Solis v. Washington*, 656 F.3d 1079 (9th Cir. 2011), the Ninth Circuit held that social workers did not qualify for the exemption because they were only required to have a degree in "one of several diverse academic disciplines or sufficient coursework in any of those disciplines," ranging from anthropology, to sociology, to criminal justice.  *Id.* at 1082, 1087.  The *Solis* Court explained that "positions that do not require a particular course of intellectual instruction directly related to the employee's professional duties do not come within the 'learned professional' exemption, even if they also require substantial practical experience[,]" but that the exemption would apply in "situations in which applicants are required to complete a particular course of instruction directly related to a position, even if they do not have a specific degree[.]" *Id.* at 1084–85.

In comparison, a field medical case manager in *Williams v. Genex Services*, LLC,  809 F.3d 103 (4th Cir. 2015) who oversaw medical record reviews, interviewed clients, and collaborated with a treatment team to analyze data and project current and long-term medical needs was found to fall within the professional exemption.  *Id.* at 110.  Because Williams was required to be a registered nurse as a prerequisite to her employment, and because she used her nursing skills to perform her job duties, the Fourth Circuit found that Williams' job met the third prong of the primary duties test.  *Id.* at 110–11.

**A.  Plaintiff's CPST Overtime Claim**

Parties have significant disagreements over the type of work Plaintiff performed as a

9

(5:15cv922)

CPST, the extent to which it was intellectual and discretionary, and whether it involved a field of science or learning.  Regardless of whether or not Plaintiff's work satisfied the first two prongs of the primary duties test, there are genuine issues of material fact as to whether Plaintiff's primary duties meet the third element of the test.

In this case, even assuming that Plaintiff's work required advanced knowledge in a field of science or learning, the educational backgrounds of Defendants' other employees call into question Defendants' assertion that Plaintiff's job required her to have the type of "advanced knowledge customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.301.  Although some employees had degrees in Social Work, Human and Social Services, Counseling, and other relevant fields, Defendants' employees also had degrees in Business Administration, Marketing, Criminal Justice, and Sports Management, and two employees did not have college degrees when hired.  ECF No. 43-16 at PageID #: 3170–71. Defendants contend that the employees had significant experience and that "[t]he least amount of experience for a non-degreed person was five years."  ECF No. 37 at PageID #: 1614. Employees' experience includes a range of backgrounds, including work with children in schools, in residential care programs, Child Protective Service work, and work as a corrections officer.  *Id.* at PageID #: 1614–15.

Defendants reads the Federal Regulations as broadly exempting any position for which the employer has required an advanced degree, comparing their employees to those in *Reich v. State of Wyoming*, 993 F.2d 739 (10th Cir. 1993).  In *Reich*, the Tenth Circuit held that game wardens who were only required to have a bachelor's degree in wildlife management, biology, or

10

(5:15cv922)

a closely related field were learned professionals.  *Id.* at 742–43.  Unlike in this case, however, the *Reich* defendants demonstrated that the skills the employees learned in school were necessary to accomplish their wildlife-management tasks.  *Id.* at 743.  It seems unlikely that the someone with a Business Administration or Sports Management degree would have the specific knowledge of Wyoming's various species and habitats necessary to perform the game wardens' job duties in *Reich*, but as evidenced by Defendants' own employees, workers with these backgrounds can successfully perform CPST job duties.  Moreover, Defendants present no evidence that there is a particular course of study necessary to be a CPST, or that the course work is somehow connected to Plaintiff's job requirements.  Defendants do not highlight specific commonalities among their employees' varied studies that would prepare them for the job. Although Plaintiff took numerous medical and scientific courses as part of her Interdisciplinary Studies degree, there is no indication that Plaintiff needed to have taken these courses to properly do her job, or that Defendants even inquired into the courses she took when she applied for the job.  ECF No. 43-1 at PageID #: 2495–2521.  Additionally, CPSTs are not required to take a certifying examination or be licensed.

Furthermore, Defendants' assertion that employees' experience can make up for a lack of degree is unconvincing.  Although Defendants cite *Rutlin* for the proposition that the FLSA does not require that learned professionals hold a bachelor's degree, Defendants' employees fall far short of the funeral director and embalmer in *Rutlin*, whom underwent specific training for mortuary sciences, took specific classes like chemistry and psychology, and passed national and state level examinations.  *Rutlin*, 220 F.3d at 742.  In fact, Defendants' emphasis on the fact that

11

(5:15cv922)

its employees' lack of formal education was supplemented by extensive experience indicates that

position is closer to the types of "occupations in which most employees have acquired their skill

by experience rather than by advanced specialized intellectual instruction" that the Federal

Regulations exclude from the exemption.  29 C.F.R. § 541.301(d).

Therefore, because there are genuine issue of material fact as to whether Plaintiff's job

requires the type "prolonged course of specialized intellectual instruction and study" described in

the Federal Regulations, the Court denies Defendants' Motion for Summary Judgment on the

issue of the case manager or CPST exemption.

### B.  Plaintiff's LPN Overtime Claim

There is no dispute that LPNs are classified as non-exempt and paid on an hourly basis.

Parties also agree that Plaintiff claimed one week of overtime in one pay period while she was

employed as an LPN and that she was not paid for this time.  ECF No. 43-3 at PageID #: 2700-

01.  Defendants argue that Plaintiff was not paid because her overtime was not preauthorized and

she had her time sheet signed by the wrong supervisor.  ECF No. 45 at PageID #: 3204.

The FLSA requires all employers to pay employees one and one-half times their regular

rate of pay for work performed in excess of forty hours in a single week.  29 U.S.C. § 207(a)(1).

To assert a claim for overtime compensation, an employee must show that she worked

uncompensated overtime hours and that her employer knew or should have known about the

overtime work, but failed to compensate her anyway.  29 U.S.C. § 207.  *Grosswiler v.*

*Frudenberg-Nok Sealing Technologies*, 642 F. App'x 596, 598 (6th Cir. 2016) (citing *Wood v.*

*Mid-Am. Mgmt. Corp.*, 192 F. App'x. 378, 381 (6th Cir. 2006); *see also White v. Baptist Mem'l*

12

(5:15cv922)

*Heath Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012).  The Act is applied on a workweek basis,

meaning that each week is analyzed separately for overtime violations.  29 U.S.C. § 207(a)(1).

"Work not requested but suffered or permitted is work time."  29 C.F.R. § 785.11. " In all such

cases it is the duty of the management to exercise its control and see that the work is not

performed if it does not want it to be performed.  It cannot sit back and accept the benefits

without compensating for them."  *Id.* at § 785.13.  Although employers are permitted to have

overtime authorization policies, they cannot discipline employees for policy violations by

withholding pay.  *See Craig v. Briedges Bros. Trucking LLC*, 823 F.3d 382, 388 (6th Cir. 2016)

(citing *Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997).  In other words, employees must be

paid for all time worked, regardless of whether it was done in violation of company policy.

Defendants misunderstand Plaintiff's argument as alleging that Defendants classified

LPNs as exempt.  ECF No. 37 at PageID #: 1602; ECF No. 45 at PageID #: 3205.  Plaintiff

agrees that Defendants properly considered LPNs to be non-exempt employees, but Plaintiff

argues that Defendants chose to not pay her overtime, in violation of FLSA.  ECF No. 43 at

PageID #: 2465.  Plaintiff has submitted time sheets from her work as an LPN showing that she

worked overtime on two occasions: the weeks of January 25, 2014 when she worked one hour of

overtime, and February 1, 2014 when she worked five hours of overtime.  ECF No. 43-19 at

PageID #: 3185.  Additionally, Defendants deny knowing about the overtime, but concede the

time sheet was submitted to the Human Resources department to be processed for payroll,

regardless of which supervisor signed it.  ECF No. 43-2 at PageID #: 2700.

Because Plaintiff has demonstrated that she worked overtime, that Defendants knew or

(5:15cv922)

should have known about the overtime, and that she was not paid for the work, the Court denies

Defendants' motion for summary judgment on this issue and enters judgment in favor of Plaintiff

on the issue of whether she is owed overtime for the period during her service as an LPN for

which she worked in excess of forty hours, presented her time sheet, and was not paid. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely acknowledged to

possess the power to enter summary judgments *sua sponte*, so long as the losing party was on

notice that she had to come forward with all of her evidence."); *United Rentals (North America), Inc. v. Keizer*, 355 F.3d 399, 411 (6th Cir. 2004) (permitting *sua sponte* grant of summary

judgment when the losing party could not demonstrate prejudice); *Sommer v. Davis*, 317 F.3d 686, 695–96 (6th Cir. 2003) (considering "whether [the losing party] had a facially meritorious

defense to the judgment" when determining whether a court's *sua sponte* grant of summary

judgment was proper). As indicated earlier, this ruling is in favor of Plaintiff individually.

### C. Summary

Finding that there remain genuine issues of material fact as to whether Defendants

properly classified case managers or CPSTs as exempt, the Court denies Defendants' Motion for

Summary Judgment on this issue. Regarding whether Plaintiff was properly compensated for

overtime work as a LPN, the Court denies Defendants' Motion for Summary Judgment and

enters judgment in favor of Plaintiff.

### IV. Plaintiff's Motion for Conditional Certification (ECF No. 39)

Plaintiff moves, on behalf of herself and all other similarly situated CPSTs ("the Putative

Class") to conditionally certify the proposed collective pursuant to 29 U.S.C. § 216(b). ECF No.

14

(5:15cv922)

39.  Plaintiff proposes a class of "[a]ll current and former Case Managers, employed at Phoenix Rising Behavioral Healthcare & Recovery, Inc. from three (3) years preceding the filing date of this action through the date of final disposition, who worked in excess of forty (40) hours per week and were not compensated for overtime worked at a rate of no less than one and one half times their regular rates." ECF No. 1 at PageID #: 20.  Plaintiff alleges that "Defendants have a common, company-wide policy of classifying CPSTs, including Plaintiff and the Putative Class, as exempt, and compensating them by salary regardless of the hours worked per week." ECF No. 39 at PageID #: 1628.

Under the FLSA, an employee may bring an action "for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216 (b); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546–47 (6th Cir. 2006).  "Similarly situated persons are permitted to 'opt into' the suit. This type of suit is called 'collective action.' It is distinguished from the opt-out approach utilized in class actions under Fed. R. Civ. P. 23." *Comer*, 454 F.3d at 547.

The Court of Appeals for the Sixth Circuit has "implicitly upheld a two-step procedure for determining whether a FLSA case should proceed as a collective action." *Waggoner v. U.S. Bancorp*, 110 F.Supp.3d 759, 765 (N.D. Ohio 2015) (Lioi, J.); *Heibel v. U.S. Bank Nat'l Ass'n*, No. 2:11-CV-00593, 2012 WL 4463771, at *2 (S.D. Ohio Sept. 27, 2012) (citing *In re HCR ManorCare, Inc.*, No. 113866, 2011 WL 7461073, at *1 (6th Cir. Sept. 28, 2011)) (further citation omitted); *see also Cox v. Entertainment U.S.A. of Cleveland, Inc.*, No. 1:13CV2656,

15

(5:15cv922)

2014 WL 4302535, at *1 (N.D. Ohio Aug. 29, 2014) (Nugent, J.).  "The first [phase] takes place at the beginning of discovery.  The second occurs after all of the opt-in forms have been received and discovery has concluded."  *Comer*, 454 F.3d at 546 (6th Cir. 2006).

At the first step, the plaintiff bears the burden of showing that the employees in the collective are "similarly situated."  *Id.* at 546.  To satisfy this burden at this initial notice stage, the plaintiff must only "make a modest factual showing" that she is similarly situated to the other employees she is seeking to notify.  *Id.* at 547.  The standard at the first step is "fairly lenient" and is less stringent than Rule 23(b)(3)'s requirements.  *Id.* at 547 (quoting *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp.2d 493, 497 (D.N.J. 2000)); *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

Plaintiffs are considered similarly situated when "they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs[,]" or when "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct."  *O'Brien*, 575 F.3d at 585.  To determine whether plaintiffs are similarly situated, district courts have looked at various factors, such as "factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action."  *Id.* at 584 (alterations in original).

16

(5:15cv922)

If a collective is conditionally certified, potential plaintiffs receive notice of their right to opt-in, and parties conduct discovery on the issue of conditional certification. *See, e.g.*, *Comer, 454 F.3d at 548*.  After all the opt-in forms have been received and discovery has concluded, the Court enters second phase of certification and more closely scrutinizes the class members to determine whether the collective is, in fact, similarly situated.  *Id. at 548*.

When, as is the case here, parties have already conducted discovery on the issue of conditional certification, some courts apply a "modest plus" standard, requiring a showing beyond the lenient step-one standard, but not as stringent as the showing required at step two. *Creely v. HCR ManorCare Inc., 789 F. Supp. 2d 819, 827 (N.D. Ohio 2011) (Zouhary, J.)*; *see, e.g., also Cox v. Entertainment U.S.A. of Cleveland, Inc., No. 1:13CV2656, 2014 WL 4302535, at *1 (N.D. Ohio Aug. 29, 2014) (Nugent, J)* (parties conducted three months of discovery prior to motion for conditional certification); *Jungkunz v. Schaeffer's Inv. Research, Inc., No. 1:11-CV-00691, 2014 WL 1302553 at *7 (S.D. Ohio Mar. 31, 2014)* (parties had conducted discovery, and Plaintiff knew the identity of all or nearly all of the potential collective members); *Hurt v. Commerce Energy, Inc., 1:12-CV-758, 2013 WL 4427255 at *7 (Gwin, J.)* (parties conducted some discovery on the certification issue).  Like under step one, the court's analysis "is confined to evaluating whether the proposed collective is "similarly situated," and does not touch upon the merits of the plaintiffs' claims. *Jungkunz, 2014 WL 1302553 at *7* (citing *Creely, 789 F. Supp. 2d at 823–24*).  Unlike step one, the court considers parties' evidence, as well as several factors typically reserved for the stage two analysis, such as "(1) the disparate factual and employment settings of the individual opt-in plaintiffs; (2) the various defenses available to defendants with

17

(5:15cv922)

respect to individual plaintiffs; and (3) fairness and procedural considerations." *Id.* (citing *Creely*, 789 F. Supp. 2d at 823, 826). Ultimately, the court determines whether the plaintiff has "made sufficient showing beyond their original allegations that would tend to make it more likely that a class of similarly situated employees exists." *Creely*, 789 F. Supp. 2d at 827.

Even under this heightened standard, Plaintiff has made a sufficient showing in this case that she and other employees suffered "from a single, FLSA-violating policy[.]" *O'Brien*, 575 F.3d at 585. Plaintiffs allege that Defendants erroneously classified all CPST workers as exempt under the learned professionals exemption. 29 U.S.C. § 231(a)(1). Given that, as discussed above, many employees perform the role of CPST either without a relevant college degree or without a degree at all, and that Defendants have been unable to show a connection between employees' specific course of study and their ability to perform their job duties, there is a genuine issue of material fact as to whether these employees are exempt under 29 C.F.R. § 541.301. Because all of Plaintiff's fellow CPSTs were potentially improperly classified as exempt, they are similarly situated to her. Therefore, at this first conditional certification stage, Plaintiffs have sufficiently demonstrated that all employees were subject to a FLSA-violating policy.

Although Defendants are correct that Plaintiff's self-serving statements alone cannot establish that she is similarly situated to other employees, Plaintiff has presented evidence beyond her own testimony. In particular, Plaintiff has submitted Defendants' answers to interrogatories, which admit that not all CPSTs had degrees, and list all CPSTs' education. ECF No. 39-11 at PageID #: 2161. Additionally, Plaintiff has provided Defendant Lisa Grubb's

18

(5:15cv922)

deposition, in which she discusses employees' education and experience.  ECF No. 39-3 at PageID #: 1916–25.

Defendants argue that because Plaintiff is no longer an employee of Phoenix Rising, she cannot adequately represent the interest of other employees.  This argument mistakenly uses the Rule 23 "adequate representation" standard, which is a stricter standard than the FLSA's "substantially similar" standard.  Under the FLSA standard, courts commonly allow former employees to represent current employees in collective actions.  *E.g. Comer*, 454 F.3d at 545 (former assistant store managers filed collective action); *Waggoner v. Bancorp*, 110 F. Supp. 3d 759 (N.D. Ohio 2015) (conditionally certifying class of former bank employees).  Defendants also argue that because Plaintiff gives "no evidence of the actual duties of the other CPST" and because she "did not perform the duties listed in the job description," she cannot represent the other employees.  This argument, however, misconstrues the issue.  The focus of an overtime case is not about whether an employee performed her job poorly, as it might be with a wrongful termination case.  Instead, in a FLSA overtime case, any time worked must be compensated.  Therefore, the only relevant issue is whether CPSTs were exempt and whether they are owed overtime.

Finally, Defendants contend that employee has not demonstrated that she routinely worked over forty hours per week, contending that Plaintiff missed six and a half months of work in her nearly two years of employment with Defendants.  ECF No. 41 at PageID #: 2395. Overtime is calculated on a workweek basis, and each week that Plaintiff was not paid overtime is a separate violation, regardless of whether she was absent during other weeks.  In response to

(5:15cv922)

Defendants' argument that Plaintiff cannot show that she ever worked more than forty hours in a week and is, therefore, unable to represent a collective of CPSTs, Plaintiff retorts that Defendants only allowed CPSTs to document forty hours a week, or eight hours a day, on their time sheets, but that Plaintiff frequently worked longer hours. ECF No. 39 at PageID #: 1636. As evidence, Plaintiff references various time sheets showing that she worked longer than eight hours. ECF No. 34 (exhibits with service logs documenting Plaintiff's time). At this initial stage of the proceedings, the incongruity between Plaintiff's time sheets and her service logs is sufficient to raise a question of the reliability of these time sheets, and therefore Defendants' allegations are not a reason to deny conditional certification.

### A. Summary

For these reasons, the Court finds that Plaintiff has "made sufficient showing beyond their original allegations that would tend to make it more likely that a class of similarly situated employees exists." *Creely*, 789 F. Supp. 2d at 827. Plaintiff's Motion for Conditional Certification and Court-Authorized Notice is granted. The Court certifies this action as a collective action made up all current and former CPSTs employed at Phoenix Rising Behavioral Healthcare & Recovery, Inc. from three years preceding the filing date of this action through the date of final disposition who elect to opt-in.

### V. Conclusion

For the foregoing reasons, the Court denies Defendants' Motion for Summary Judgment in its entirety. Regarding whether Plaintiff was properly compensated for overtime work as a LPN, the Court enters judgment in favor of Plaintiff. The Court also grants Plaintiff's Motion

(5:15cv922)

for Conditional Certification.  Parties shall meet and confer to submit a proposed schedule for

filing a proposed joint notice to the Court and notifying all potential collective members.  The

jointly proposed schedule shall be filed with the Court within seven days of this Order.


      IT IS SO ORDERED.


  September 30, 2016                    */s/ Benita Y. Pearson*         
Date                                         Benita Y. Pearson
                                       United States District Judge

21